VILLENEUVE BORDELON et al. *v.* THOMAS H. & W. B. LEWIS.

*Article 127 of the Constitution of 1845, does not restrict the power of School Directors in the imposition of taxes under the Act of 3d May, 1847.*

APPEAL from the District Court, Parish of St. Landry, *Overton,* J.  *Linton & Martel,* for plaintiffs.  *T. H. & W. B. Lewis,* for defendants and appellants.

DUNBAR, J.  This case comes up for the second time before us, having been remanded at a former term of this Court for a new trial.  The plaintiffs, Directors of School District, No. 1, parish of St. Landry, sue the defendants for $124, being the amount of their special school tax for said District, assessed upon the *ad valorem* value of their property subject to taxation, under the provisions of the Act of the Legislature of Louisiana, approved the 3d May, 1847, entitled an Act "to establish free public schools in the State of Louisiana." A judgment was rendered in the Court below for the plaintiffs, and the defendants have appealed.  In their answer the defendants set up by way of defence, that the tax was more than double any amount that might be necessary, was exorbitant and unreasonable and in violation of the constitution of this State. Fortunately for us these very important questions are not now presented for the first time to our consideration.  The counsel for the defence, in their oral argument, relied much upon the point that this tax was unconstitutional, it being in violation of Art. 127 of the Constitution of 1845, which is in these words :   "Taxation shall be equal and uniform throughout the State."   In the case of th *Second Municipality* v. *Duncan,* 2 Ann. 182, we decided that this Article of the Constitution applies to State and not to municipal taxes, and that the ordinance of the Council of the Second Municipality of New Orleans of the 29th August, 1846, imposing a special tax on all real estate within the limits.of the Municipality for the purpose of paying its debts and providing for the support of the public schools, is legal and constitutional.  *Chief Justice Eustis,* in delivering the opinion of the Court, quoted from the decision of the Supreme Court of Kentucky, in the case of the *City of Louisville* v. *McQuillan's heirs,* 9th Dana's Reports, remarks equally applicable to our constitution as to the constitution of Kentucky :   "Among these political ends and principles, *equality,* as far as practicable, and security of property against irresponsible power, are eminently conspicuous in our State constitution, but an exact equalization of the burden of taxation is unattainable and utopian."  And then went on to remark :   "That the extreme difficulty of approaching an equality in the distribution of the burthens of taxation, is obvious to the most superficial observer—nor is its solution rendered easy by the progress of the science of political economy.  The various, complicated and hidden sources of wealth, and the different opinions of economists as to the operation of any one tax or impost, show the obstacles which would attend any judicial inquiry as to the approximation to equality in a system of taxation.  In the case before us, to use the language of *Chief Justice Marshall :*  'We are not driven to the perplexing inquiry, so unfit for the judicial department, what degree of taxation is the legitimate one, and what degree may amount to the abuse of the power.' *McCulloch* v. *State of Maryland,* 4th Wheaton, 430."  In the case of the *Providence Bank* v. *Billings & Pittman,* 4th Peters, 563, on the same subject,

*Chief Justice Marshall* says: "The power of legislation and consequently of taxation operates on all the persons and property belonging to the body politic. This is an original principle which has its foundation in society itself. It is granted by all for the benefit of all. It resides in government as a part of itself, and need not be reserved, when property of any description, or the right to use it in any manner, is granted to individuals or corporate bodies. However absolute the the right of an individual may be, it is still in the nature of that right, that it must bear a portion of the public burthens; and that portion must be determined by the legislature. The interest, wisdom and justice of the representative body, and its relations with its constituents, furnish the only security, where there is no express contract against unjust and excessive taxation; as well as against unwise legislation generally."

This Court did, however, say in the case of the *Second Municipality* v. *Duncan*, just referred to, "That it might not be out of place to state that, as the guardians of the rights and property of citizens, we should fail in our duty if we were to forbear to exercise our power on any proper occasion to protect them from spoliation; at the same time it must be confined to its constitutional limits, and to those cases in which its authority cannot be questioned, and its action will consequently be effectual."

We do not consider the case under consideration is of this character, nor does it require, or admit of judicial interposition. We cannot perceive in the Act of the 3d of May, 1847, anything in violation of the constitution. If the legislature has the right, under that instrument, to delegate the power of taxation to the city of New Orleans, or one of its municipalities, to promote public education, as we have already determined, there is no good reason why the same power should not be delegated to School Directors in the various parishes of the State. Such a power has been delegated to Police Juries for the purpose of making roads, levees and bridges, and for other purposes, from the commencement of our State government to the present time. Their power to lay taxes for such purposes has not been questioned before the Courts or the people, and we think it is now too late in the day to question it. Indeed, we think that such powers are, not only constitutionally conferred upon the Police Juries and School Directors for parochial purposes, but that such powers could not, to advantage, be entrusted or exercised by the Legislature itself or Courts of Justice. It would be impossible for the Legislature to exercise such powers without being in constant session, and then they would have to do it without the local knowledge or information necessary—and as to the ordinary supervisal, or administration of such parochial concerns, it is certainly not the province of the judiciary. There is nothing in the record to satisfy us that the tax in this case can amount to a spoliation, or an unlawful appropriation of private property, and we think the only remedy the defendants have is the ballot box, if the conduct of the School Directors does not meet their approbation.

We said in our former opinion in this case, that "if no tax was imposed by the former directors, and the people of the district have had the benefit of the schools, they are bound in conscience to pay those expenses for which a tax might have been imposed, and they have suffered no injury by the delay which has been given them. Laws should receive a reasonable interpretation." We see no good reasons for change in our opinion upon this question, and we still think that, upon a fair construction of the Act of 1847, that the plaintiffs had

a right to levy a tax to discharge the indebtedness of their predecessors in office.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.